SPINAK, APPELLEE AND CROSS-APPELLANT, *v.* UNIVERSITY OF AKRON, APPELLANT AND CROSS-APPELLEE.

(No. 81AP-564—Decided November 3, 1981.)

*Messrs. Matz, Petersilge & Weimer, Mr. Paul E. Weimer* and *Mr. Benjamin F. Suffron, III,* for appellee and cross-appellant.

*Mr. William J. Brown,* attorney general, and *Mr. Warren M. Enders,* for appellant and cross-appellee.

McCORMAC, J. Plaintiff filed a complaint in the Court of Claims against the University of Akron alleging that he was unlawfully terminated by defendant as a

tenured Assistant Professor of Music in June 1978, solely due to reaching age sixty-five and for no other reason. Plaintiff sought damages and reinstatement to his position.

The trial court granted summary judgment to plaintiff on the issue of liability, there being no facts in dispute. The parties then entered into stipulations as to damages, following which the trial court granted judgment to plaintiff in the sum of $67,521.

The University of Akron has appealed, asserting the following assignment of error:

"The trial court erred in granting summary judgment in appellee's favor, since Ohio Revised Code Section 3307.37 should not be construed as a prohibition against the involuntary retirement of any member of the State Teachers Retirement System prior to the time such member has attained the age of seventy."

Plaintiff has cross-appealed, alleging that the trial court erroneously assessed damages, setting forth the following assignments of error:

"1. The trial court failed to follow the stipulations of counsel in making its award to plaintiff.

"2. That the trial court erred in failing to award interest from July 1st, 1978 until June 1st, 1981."

Plaintiff was hired by the University of Akron as an Assistant Professor of Music in 1968, at which time the University of Akron was a state university with its faculty, including plaintiff, being members of the State Teachers' Retirement System. Plaintiff was granted tenure as an Assistant Professor of Music in September 1973. He was forced to retire involuntarily on June 30, 1978, for the sole reason that he was sixty-five years of age.

Plaintiff's grant of tenure was stated to be in accordance with Bylaws and Regulations of the Board of Trustees and the University of Akron Faculty Manual and provided that nothing in the cer-

tificate of appointment should abrogate the rights of tenured faculty. The faculty manual provided that "the appointment of a faculty member on indefinite tenure may be terminated by the Board for cause. * * *." As to retirement, the faculty manual provided as follows:

"Members of the teaching and administrative staff shall retire at the end of the academic year in which they shall have attained the age of 65. * * *"

The issue is whether a state university may, by its faculty manual or rules and regulations, provide for mandatory retirement of a tenured faculty member solely because he has reached the age of sixty-five.

R.C. 3307.37, a section of the chapter pertaining to the State Teachers' Retirement System, which was in effect at all times during which plaintiff was a faculty member at the University of Akron as well as a member of the State Teachers' Retirement System, provides as follows:

"An employer may as of the thirtieth day of June of any year terminate the contract or the employment of any member who has attained the age of seventy or who will attain the age of seventy by the following thirty-first day of August."

Does R.C. 3307.37 prohibit a state university from mandatorily requiring the retirement of a member of the State Teachers' Retirement System at a lower age than that specified by R.C. 3307.37, to wit: age sixty-five instead of age seventy?

R.C. 3307.37 applied to the University of Akron, as the University of Akron is an employer as defined by R.C. 3307.01(A). It applied to plaintiff as he was a member of the State Teachers' Retirement System according to the definition set forth by R.C. 3307.01(E).

In *State, ex rel. Bishop*, v. *Bd. of Edn.* (1942), 139 Ohio St. 427 [22 O.O. 494], a public school teacher who was a member of the State Teachers' Retirement System was forced to retire at age sixty-five by rule of a local school district board of

education, which provided for mandatory retirement at that age, despite the fact that the school teacher had a continuing contract. Relying upon G.C. 7896-34, the predecessor of R.C. 3307.37, the Supreme Court stated, at pages 442-443, that a local rule of the board of education "cannot override the statute. * * * Under G.C. 7896-34, a teacher cannot be compelled to retire until he or she becomes seventy years old. Consequently, the Board of Education of the Cleveland City School District was without authority to deny the relator, * * * a continuing contract on the ground that he had reached the age of sixty-five years." G.C. 7896-34 provided that a member of the State Teachers' Retirement System, who had five years of service, could retire at sixty years of age and that he shall be retired at the end of the school year in which the age of seventy is attained. The Supreme Court interpreted G.C. 7896-34 to prohibit mandatory retirement prior to the age of seventy.

Consistent with *Bishop,* the Ohio Attorney General has stated as to the effect of R.C. 3307.37 that it "reveal[s] a clear legislative intent to fix the mandatory retirement age of school employees at 70 years of age" and that "a board of education may not by regulation make it mandatory that its employees retire at any earlier age than 70 as provided in Section 3307.37 * * *." 1971 Ohio Atty. Gen. Ops., No. 71-079, at pages 2-269, 2-271.

While plaintiff was appointed as a tenured faculty member in accordance with the policies of the University of Akron as set forth in the Bylaws and Regulations of the Board of Trustees and the University of Akron Faculty Manual, the certificate of appointment also provided that nothing therein shall abrogate the rights and responsibilities of tenured faculty. One of the rights of a tenured faculty member, who is a member of the State Teachers' Retirement System, is that he shall not be terminated for reason of age until he reaches the age of seventy.

Just as a public school teacher with a continuing contract cannot be mandatorily terminated by reason of age until he reaches the age of seventy, neither can a faculty member who holds tenure at a public university. Both a local board of education and the board of trustees of a state university have broad authority to promulgate rules and regulations for the operation of the school system for which they are responsible, but in neither case can those rules and regulations override the general law of the state as set forth by R.C. 3307.37.

Defendant's assignment of error is overruled.

The parties entered into stipulations regarding damages, including the following:

"7. That any award made in this case will be in and for damages and that the effect of the retirement under the State Teachers' Retirement of Ohio will not be affected and will neither add to nor subtract from the award made in the case to the Plaintiff, if any."

Part of the stipulation was a provision that plaintiff would waive the appearance of his subpoenaed witness, Dr. Guzzetta, a witness who apparently would have testified concerning the pecuniary effects of plaintiff's retirement at age sixty-five as opposed to age seventy as related to benefits from the State Teachers' Retirement System.

Plaintiff had drawn about three years payment from the State Teachers' Retirement System after having been forced to retire at age sixty-five, based upon ten years service or twenty percent of his average salary for the last three years of service. He would continue to receive those benefits under the State Teachers' Retirement System. He would not have to make payments after age sixty-five. Had he remained to age seventy, he would have paid into the system for five more years and would not have drawn benefits from the system during that period but his ultimate pension would have been

more than fifty percent higher, being based on thirty percent of his last three years, an average salary that would have been higher than the three years upon which it was based for age sixty-five retirement. The quoted stipulations were arrived at between the parties apparently on the basis that the monetary pros and cons of the forced early retirement would almost exactly offset each other and that, after conferring with Dr. Guzzetta, the parties decided it would not be necessary to consume a great deal of time going through all of the mechanical details of the offset. They could simply stipulate that the damage award would not be affected by the early retirement, either to add to or subtract from the award made to the plaintiff. Disregarding this stipulation, the trial court subtracted $21,680 from the damages awarded plaintiff on the basis that those payments represented a collateral resource referred to in R.C. 2743.02(D), which is to be subtracted from any damage award given a claimant against the state. The problem with that deduction, however, was that there was no evidence to support the conclusion that the $21,680 to be received by plaintiff during the five years of early retirement was a collateral resource. Instead the stipulated evidence was that the early retirement would not add to or subtract from the damage award.

Plaintiff's (cross-appellant's) first assignment of error is sustained.

The trial court further deducted $3,480 from the damage award given plaintiff, based upon a six percent discount to reduce to present value the $48,788 that plaintiff was awarded for future salary. At the time of trial and judgment plaintiff had been denied his salary for three years in the past from the year of mandatory retirement in June 1978 until June 1981; he was entitled to two more years of salary from June 1981 until June 1983, which he would ordinarily have received on monthly installments as they accrued in the future. The trial court reduced the future payments to present value. The fallacy behind that reduction is that the state had retained his past-due salary for three years from July 1, 1978 until June 1, 1981, and plaintiff was credited with no interest for failing to receive his salary on time because of the unlawful early retirement forced upon him. Plaintiff states that he is willing to give up his right to interest on the past-due salaries if the trial court's reduction to present value of the two years future salary is eliminated. The stipulations provided for no reduction to present value nor any interest on the past-due amounts. We agree with plaintiff that an offset of these amounts is fair for the state and that the trial court's reduction of the future payments to present value was not justified under the circumstances.

Plaintiff's (cross-appellant's) second assignment of error is sustained to the extent that the reduction of $3,480 should not have been made.

Defendant's assignment of error is overruled. Plaintiff's (cross-appellant's) first and second assignments of error are sustained on the basis set forth in the decision. The judgment of the trial court is affirmed in part and reversed in part. The case is remanded to the trial court with orders to revise the damage award to plaintiff to the sum of $92,681.

*Judgment affirmed in part
and reversed in part.*

WHITESIDE and MOYER, JJ., concur.