MEYER, APPELLEE, *v.* CHAGRIN FALLS EXEMPTED VILLAGE SCHOOL DISTRICT BOARD OF EDUCATION ET AL., APPELLANTS.

(No. 45065—Decided March 17, 1983.)

*Mr. Joseph Berick, Mr. Robert Stone* and *Mr. James Markus,* for appellee.
*Mr. James Woodring* and *Mr. Roy E. Lachman,* for appellants.

MARKUS, P.J. Plaintiff-librarian brought this action against the school board that employed her and the individual board members, claiming that they had wrongfully terminated her employment. On cross-motions for summary judgment, the trial court ruled that the board had varied from statutory procedures in its attempt to retire plaintiff at age seventy, so the court granted plaintiff judgment for an additional year's salary. At the same time, the trial court rejected plaintiff's claims that defendants had violated her civil rights and dismissed her actions against them for additional compensatory and punitive damages.

Both the board and plaintiff appeal. The board contends that (a) plaintiff's superannuation was proper, (b) plaintiff

waived any right to bring this action by her delay in objecting to termination, (c) plaintiff's damages should be reduced by retirement benefits which she had received, and (d) the court erred by later adding prejudgment interest to the award. Plaintiff's cross-appeal challenges the dismissal of her additional claims against the board's members, arguing that her termination violated her rights to due process and equal protection, and that her termination was motivated by malice, prejudice and discrimination.

We conclude that defendants complied with governing statutes and properly superannuated plaintiff, so they are not liable to her for any claimed damages. If plaintiff were entitled to damages, prejudgment interest was not properly awarded. Otherwise, we agree with the trial court's rulings on the parties' claims and defenses. In view of these decisions, we reverse in part, affirm in part, and enter final judgment for defendants.

Many of the facts in this case are undisputed. Plaintiff was employed by defendant school board as a high school librarian with tenure and a continuing contract. She attained age seventy during August 1977. In anticipation of her forthcoming seventieth birthday, the high school principal discussed her possible retirement with her on several occasions in March and April 1977. These discussions were prompted by the school district's Board of Education Policy 4119.3, which had been adopted pursuant to retirement provisions in R.C. 3307.37. Policy 4119.3 provides:

"Retirement. Any employee who reaches the age of seventy years between September 1, and August 31, in any given school year, shall be retired before the opening of the next school year. Exceptions may be made on the recommendation of the Superintendent of Schools and the approval of the Board of Education."

On April 14, 1977, the superintendent of schools sent the following written notice to plaintiff regarding her employment contract:

"This is to notify you that your contract will be discussed and acted upon by the Chagrin Falls Board of Education at its meeting on Monday, April 18, 1977."

Plaintiff chose not to attend that meeting, believing that the board's decision to retire her was "cut and dried." At that meeting, the board voted unanimously to terminate plaintiff's contract by involuntary retirement.

Plaintiff learned about that action on the same evening. She was formally notified by certified letter dated April 25, 1977:

"This letter is to officially inform you that the Chagrin Falls Exempted Village School District Board of Education, at a regular meeting on the 18th day of April, 1977, unanimously voted to terminate your contract effective August 31, 1977, due to superannuation. This action by the Board of Education was taken in accordance with its policy 4119.3 and section 3307.37 of the Ohio Revised Code."

The school board's collective bargaining agreement with its professional staff extended "during the period September 1, 1975 through August 31, 1977." The local school calendar established a summer recess during which professional personnel had no duties under their regular contracts, from June 11, 1977 to September 31, 1977.

On April 22, 1977, plaintiff applied to the State Teachers Retirement System for retirement benefits effective July 1, 1977, and she began receiving payments on September 21, 1977. Plaintiff denied any obligation to retire during her discussions with the high school principal in March and April, but she first notified the board that she objected to her involuntary retirement on August 1, 1977. She filed this case challenging the board's action on November 4, 1977.

Her complaint asserted, *inter alia,* that her 1977 termination was void because it purported to superannuate on a

date different from June 30, which she claimed was the only termination date authorized by statute. Therefore, as a protective measure and without prejudice to their position that they had properly terminated her contract in 1977, the board again voted to terminate her for superannuation effective June 30, 1978. This second termination vote occurred on June 12, 1978, and the board sent plaintiff written notice of its further action on June 19, 1978. Apparently, all parties to this action agree that the 1978 termination was lawful, if the 1977 termination was not.

I

Defendants' first assignment of error asserts:

"The court erred in holding that when a school board superannuates a teacher under O.R.C. § 3307.37 effective August 31 of that year, and notifies the teacher of its decision prior to June 30 of that year, the teacher is entitled to an extra year's salary."

This claimed error presents the dispute that is central to all parties' positions. Its resolution depends on the proper interpretation of R.C. 3319.08 and 3307.37, which govern involuntary retirement of a certificated school faculty "member" with a "continuing contract" by a public educational institution "employer."

Plaintiff had been employed on a continuing contract as a tenured faculty member, so her contract was automatically renewed each year, subject to any changed terms in negotiated collective bargaining agreements. R.C. 3319.08 then defined the duration of a continuing contract:

"A continuing contract is a contract which shall remain in effect until the teacher resigns, elects to retire, *or is retired pursuant to section 3307.37 of the*

*Revised Code* or until it is terminated or suspended * * *." (Emphasis added.)

Each of the five procedures by which a continuing contract can be concluded is governed by separate code sections. A teacher's resignation must conform to time limits in R.C. 3319.15, or the teacher's certificate may be subject to a year's suspension. Terms and conditions for a teacher's voluntary retirement are controlled by R.C. 3307.38 and related sections. The grounds and procedures for "termination of a contract by board of education" are prescribed in R.C. 3319.16. Suspension is authorized by R.C. 3319.15 (for improper resignation) and R.C. 3319.17 (for reduction in number of teachers employed).

The board here sought to terminate plaintiff's continuing contract by involuntary retirement, a procedure separately authorized by R.C. 3307.37:

"An employer may as of the thirtieth day of June of any year terminate the contract or the employment of any member who has attained the age of seventy or who will attain the age of seventy by the following thirty-first day of August."

Unlike the code section governing termination for cause (R.C. 3319.16), this section makes no provision for notice to the teacher or a hearing on termination by superannuation.[1]

This board had adopted local rules, regulations, and contracts which affected its implementation of involuntary retirements allowed by R.C. 3307.37. Local regulations and contracts, consistent with state law, are expressly authorized in R.C. 3313.17, 3313.20, and 3313.47. Boards of education have broad discretion to carry out their statutory functions. *Greco* v. *Roper* (1945), 145 Ohio St. 243, at 248-250 [30 O.O. 473]. Thus, defendants' Board of Education Policy

---

[1] In our discussion of plaintiff's first assignment of error, *infra,* we conclude that constitutional due process requires some reasonable notice of the board's action and an opportunity to be heard, even though no code sections make any such requirement.

4119.3 established a rule for mandatory retirement at age seventy, subject only to the board's power to make specific exceptions on the superintendent's recommendation.

A mandatory retirement program is consistent with R.C. 3307.37, if the mandatory retirement age is not earlier than the age at which involuntary retirement is authorized by that code section. Cf. *State, ex rel. Bishop,* v. *Bd. of Edn.* (1942), 139 Ohio St. 427, at 442-443 [22 O.O. 494]; *Spinak* v. *University of Akron* (1981), 3 Ohio App. 3d 388, at 389-390; 1971 Ohio Atty. Gen. Opinions, No. 71-079. Indeed, the law governing involuntary retirement for teachers originally mandated retirement at age seventy, rather than authorizing local boards to so direct. 109 Ohio Laws 237, at 238 (1921), G.C. 7896-34.

This board also made a collective bargaining agreement with an association which represented all personnel holding teaching certificates (including librarians), who were not in administrative positions. That agreement specified terms and conditions of plaintiff's employment, including salary and fringe benefits. By its express terms, it was valid and effective through August 31, 1977. By statute the "school year" extends from July 1 to the following June 30. R.C. 3313.62. However, the school board had authority to agree with its employees to a different "contract year," so long as no substantial statutory rights were thereby affected. Cf. R.C. 3307.01(P) ("contract year" may not correspond with "school year"). Since the certificated personnel performed their duties each "contract year" within a single statutory "school year," we see no abuse of the board's discretion from the use of a "contract year" which was not identical with the statutory "school year."

Further, the school board had an obligation to adopt a "school calendar year" which specified the dates on which classes would be held and professional personnel would perform their duties. For the intervals involved here, this district's "school calendar year" extended from September 1 to the following June 10 with designated vacations and holidays. That calendar was necessarily subject to change when circumstances required revisions to ensure that the minimum required class days were provided for the "school year." See R.C. 3313.48 to 3313.485.

Plaintiff contends that R.C. 3307.37 permits superannuation which is effective on June 30, but prohibits superannuation which is effective on any other date. Her counsel argues that the language of R.C. 3307.37 requires that conclusion, and that the statutory designation of June 30 as the end of a "school year" explains the legislative decision to limit school board action to that single date for involuntary retirements. We disagree.

R.C. 3307.37 authorizes school boards to "terminate the contract or the employment" "as of" June 30 for persons attaining age seventy by August 31 that year. Thus, the board could properly terminate either the teacher's contract *or* the teacher's employment so as to conclude the employment duties at the end of the statutory school year (June 30). For a teacher whose continuing contract would otherwise terminate and renew automatically on June 30, superannuation on that date would be necessary to prevent contract renewal, even though actual employment duties might end a short time earlier. For a teacher whose employment duties have concluded under the pending contract by June 30, the board must terminate the contract whenever it expires before or after that date so as to prevent automatic renewal.

R.C. 3307.37 simply requires the local board to accomplish involuntary retirement for age in such a manner that employment duties do not extend into a new statutory school year. That result occurred here. Plaintiff's employment duties concluded on June 10, by reason of the end of the school calendar year. Plain-

tiff's contract was terminated on August 31, which was the date her continuing contract would otherwise terminate and automatically renew itself. Under the plaintiff's interpretation of R.C. 3307.37, a local board whose collective bargaining contract year varied from the statutory school year could never superannuate its professional personnel without either violating the statute or breaching its contract. We do not believe that the legislature intended to give local boards that dilemma, particularly since the legislature has consistently recognized that contract years may not correspond with the statutory school year.[2]

Therefore, the combination of this district's school calendar and its termination of plaintiff's contract effectively concluded plaintiff's "employment" as of June 30, while concluding the board's contractual obligations when the contract expired on August 31. That procedure satisfied the superannuation provisions of R.C. 3307.37, so plaintiff was properly retired and has no right to further salary.

Defendants' first assignment of error is well-taken. Consequently, defendants are entitled to the entry of final judgment in their favor. We consider the remaining assignments of error solely to comply with our responsibilities under App. R. 12(A).

## II

Defendants' second assignment of error asserts:

"The court erred in ruling that when a party delays in objecting to superannuation, and then seeks and receives financial benefits from the superannuation, she has not waived her right later to object to the superannuation and is not estopped from bringing legal action to challenge it."

Waiver is the voluntary surrender or relinquishment of a known legal right by agreement, or a failure to act upon a right plainly indicating an intention not to claim such right. *Motz* v. *Root* (1934), 53 Ohio App. 375. Estoppel precludes an individual from asserting a claim where that individual has misrepresented or willfully concealed facts from another with the intent to have the other act, and where the other is induced to so act to his injury or detriment. *New York Central RR. Co.* v. *General Motors Corp.* (N.D. Ohio 1960), 182 F. Supp. 273.

Here, plaintiff was formally notified of her superannuation on April 25, 1977. She applied for retirement benefits in April 1977, and received payments during the 1977-1978 school year. Further, defendants claim there is no evidence that plaintiff objected to her retirement prior to the filing of this lawsuit in November 1977. Defendants contend that plaintiff is thereby precluded from objecting to defendants' actions. However, plaintiff asserts that she did not voluntarily agree to her termination. Her conduct in applying for and receiving retirement benefits does not necessarily indicate her intent to give up her right to continued employment. Plaintiff may have been concerned about her financial situation, and she may have anticipated an extended period of time before her dispute with defendants was resolved. Cf. *Poehls* v. *Young* (1945), 144 Ohio St. 604, at 610-611 [20 O.O. 213]; *Spinak* v. *University of Akron, supra.* Plaintiff did not willfully conceal or make

---

[2] R.C. 3307.01(P) now defines "year" for the State Teachers Retirement System as July 1 to June 30, "except that for the purposes of determining final average salary, 'year' may mean the contract year." Until 1975, the term "year" for the State Teachers Retirement System meant September 1 to August 31, even though the statutory school year for other purposes has consistently been July 1 to June 30, since 1943. Am. Sub. H.B. No. 1034 (effective September 26, 1974), 135 Ohio Laws 1036, 1045, former R.C. 3307.01(Q). Thus, superannuation before 1975 was considered proper on August 31. 1946 Ohio Atty. Gen. Opinions, No. 1165.

misrepresentations about her plan to object to her superannuation in order to induce defendants to act, and defendants have not identified any injury or detriment resulting from any alleged misrepresentations.

Therefore, the trial court correctly refused defendants' request for summary judgment on the basis that waiver or estoppel precluded plaintiff from asserting this claim. A genuine issue of material fact remained as to plaintiff's intentions when she filed her application for retirement benefits, but defendants do not seek a trial. Defendants' second assignment of error is without merit.

### III

Defendants' third assignment of error contends:

"The court erred in failing to set off the retirement pay Meyer received from July 1, 1977 to June 30, 1978 from its award of that year's salary."

The trial court awarded plaintiff $20,475, an amount equal to her annual salary for the 1977-1978 school year. Defendants claim that plaintiff received retirement benefits starting in July 1977, and that the amount she presumably received for a twelve-month period (allegedly $8,808) should have been set off against the amount of damages awarded.

We are unable to review the merits of defendants' claim. The trial court decided this case on summary judgment; the court received no evidence and made no determination about the amount of benefits plaintiff received. Such benefits might well be germane in determining plaintiff's damages for a premature termination. Cf. *State, ex rel. Guerrero, v. Ferguson* (1981), 68 Ohio St. 2d 6 [22 O.O. 3d 98] (unemployment compensation as setoff for back pay award). Those calculations might also include her net loss after some payroll deductions and any reduction in prospective pension benefits from her early termination. Cf. *Spinak v. University of Akron, supra,* at 390-391. These are

all genuine issues of material fact which remain unresolved, so the record does not support a summary judgment for the precise setoff claimed by defendants. Defendants do not seek a retrial on these matters. Their third assignment of error is overruled.

### IV

Defendants' fourth assignment of error asserts:

"The court erred in awarding interest against a public board of education, under the facts of this case."

In *State, ex rel. Parrott,* v. *Bd. of Public Works* (1881), 36 Ohio St. 409, the court held at paragraph four of the syllabus:

"In the absence of a statute requiring it, or a promise to pay it, interest cannot be adjudged against the state for delay in the payment of money."

In *Lewis v. Benson* (1979), 60 Ohio St. 2d 66 [14 O.O.3d 269], the court cited *Parrott* and ruled that a state civil service employee was not entitled to interest on back pay awarded to him for his improper dismissal. A contrary rule applies to back pay for municipal employees. *State, ex rel. Crockett,* v. *Robinson* (1981), 67 Ohio St. 2d 363, 367-368 [21 O.O.3d 228].

Even closer to the present situation is the decision in *Tucker v. Boardman Bd. of Edn.* (Dec. 9, 1980), Mahoning App. No. 79 C.A. 150, unreported. A trial court had ordered the reinstatement of three elementary school counselors with back pay and interest. The appellate court found no contractual or statutory obligation justifying the payment of interest, and therefore concluded that the board of education could not be required to pay interest as part of the damages award. See, also, *Woodrum v. Rolling Hills Local Bd. of Edn.* (Oct. 13, 1981), Guernsey C.P. No. 30201, unreported. Contra *Huntington Local Edn. Assn. v. Bd. of Edn.* (Oct. 4, 1982), Ross App. No. 926, unreported.

Neither the applicable collective bargaining agreement nor any other con-

tract imposes a duty on defendant to pay interest on a salary award. Nor is there any statutory authority requiring the payment of prejudgment interest by this governmental entity. Therefore, the trial court erred in awarding plaintiff interest.

Further, even if prejudgment interest were proper as damages, it was improperly ordered here after the trial court had lost jurisdiction over its judgment. After an appeal is filed, the trial court is ordinarily divested of all jurisdiction inconsistent with that of the appeals court to modify, reverse, affirm or review its judgment. Civ. R. 60(A) provides a narrow exception:

"Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court."

Defendants filed their appeal in the trial court and in this court on March 1, 1982, the record was filed in this court on April 5, 1982, and the trial court entered a *nunc pro tunc* judgment adding interest on April 12, 1982. The trial court stated in its entry:

"[The original judgment] is not a correct memorial of the judgment as rendered and announced by this Court in the particulars hereinafter set forth, in that through inadvertence, there was omitted from the record of said judgment interest on said sum at the legal rate of interest."

Nevertheless, this appeal was pending at the time the trial court made its supplemental judgment entry, and the trial court made the correction without leave of this court. The trial court lacked jurisdiction to correct the judgment entered on February 1, 1982 in that manner. See *Zanco, Inc.* v. *Galena Shale, Tile & Brick Co.* (May 22, 1980), Cuyahoga App. No. 41371, unreported.

Defendants' fourth assignment of error is well-taken.

## V

Plaintiff's first assignment of error on her cross-appeal asserts:

"Plaintiff's termination without notice and without opportunity for hearing violated her constitutional right to due process."

Due process requires that a governmental employer give its employee notice and an opportunity for a hearing about the employee's termination, where the employee has a property interest in continued employment. *Board of Regents* v. *Roth* (1971), 408 U.S. 564. The federal Supreme Court defined such a property interest in employment in *Roth,* at 577:

"[A] person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."

In Ohio, tenured public school teachers are employed under "continuing contracts." Therefore, such a tenured teacher has an entitlement to continued employment, and the teacher's employer cannot terminate their contract without giving the teacher notice and an opportunity to be heard. See *Lukac* v. *Acocks* (C.A. 6, 1972), 466 F. 2d 577 [64 O.O.2d 364]; and *Ryan* v. *Aurora City Bd. of Edn.* (C.A. 6, 1976), 540 F. 2d 222.

In this case, plaintiff was a tenured public school teacher employed under a continuing contract. There was no previous modification of her contract, and we reject defendants' contention that she was automatically reemployed under a limited contract or lost tenure when she turned seventy. But, see, *Monnier* v. *Todd Cty. Independent School Dist.* (S.D. 1976), 245 N.W. 2d 503. We conclude that plaintiff was employed under that con-

tinuing contract until the effective date of her termination, and she was entitled as a matter of constitutional due process to notice and an opportunity to be heard about her termination. We find no statutory procedures for such notice and hearing,[3] but they must be reasonable to afford an opportunity to challenge the propriety of the termination.

On April 14, 1977, plaintiff received written notice from the superintendent of schools that her contract would be discussed and acted upon by the board at a meeting on April 18, 1977. The notice did not ask or recommend that plaintiff attend. However, school board meetings are open, so plaintiff had an opportunity to appear and discuss her contract. She learned from her earlier discussions with the high school principal that the basis for termination would be her age, and she chose not to attend the meeting because she believed that her superannuation would be "cut and dried."

Furthermore, even if plaintiff had been denied an opportunity to be heard then, due process was satisfied by the detailed notice provided on April 25, which afforded her sixty-seven days during which she could have requested a hearing before her contract was terminated. She did not do so because there was no purpose. Board Policy 4119.3 called for involuntary retirement of employees reaching age seventy by August 31, unless the board made a special exception at the superintendent's request. Plaintiff concedes that she was age seventy by August 31, 1977.

The only question subject to challenge at such a hearing would have been her age, a matter which she does not dispute. She had no right to a hearing on the clearly discretionary action by the superintendent and the board regarding a special exception, since no statute and no board rules limit that discretion or give her any property right in its application. Thus, there could have been no prejudice to plaintiff, even if notice and hearing about an undisputed issue had been denied her.

Plaintiff's first assignment of error is overruled.

## VI

Plaintiff's second assignment of error asserts:

"Genuine issues as to material facts existed with respect to plaintiff's claim that her termination was motivated by malice, prejudice and discrimination."

For summary judgment to be granted, there must be no "genuine issue as to any material fact" and "the moving party [must be] entitled to judgment as a matter of law." Civ. R. 56(C); *Kwait* v. *John David Mgmt. Co.* (1974), 42 Ohio App. 2d 63 [71 O.O. 2d 425]. Plaintiff's complaint alleged that her termination was not a superannuation pursuant to R.C. 3307.37, but was really an attempted termination for cause which should have

---

[3] In a divided decision, another appellate court ruled that notice requirements in R.C. 3319.16 apply to a superannuation termination under R.C. 3307.37. *State, ex rel. Kohr,* v. *Hooker* (1958), 106 Ohio App. 1 [6 O.O.2d 269]. We believe that a close examination of the relevant code chapters shows that these two sections in different chapters are completely independent of each other. Any ambiguity in the language of R.C. 3319.08, which governs termination of continuing contracts, is resolved by reviewing the statutory history of that section. When originally adopted, that statute provided that a continuing contract shall remain "in full force and effect until the teacher resigns, elects to retire, or is retired pursuant to section 7896-34 of the General Code [now R.C. 3307.37], *or until it is terminated or suspended as provided in this act * * *.*" (Emphasis added.) 119 Ohio Laws 451, at 452 (1941), former G.C. 7690-1. Thus, the final clause showed that involuntary retirements for age were separate and distinct from terminations for cause under the Teachers Tenure Act (formerly G.C. 6790-1 to 7690-8, and later G.C. 4842-7 to 4842-14, now R.C. 3319.08, 3319.09 to 3319.11, 3319.12, 3319.13, 3319.14, 3319.15, 3319.16, 3319.17 and 3319.18).

been effected pursuant to R.C. 3319.16. That statute provides specific grounds and procedures to terminate a teacher for cause.[4]

The school board and its members sought summary judgment, asserting (1) the board harbored no ill will toward plaintiff and did not use the retirement statute as a pretext for terminating her for cause, and (2) the board was immune from damage liability for plaintiff's claims. The trial court held that the school board was immune from tort liability as a separate entity, since it was acting in its corporate capacity. The court further concluded that plaintiff's evidence failed to show malice or the use of the retirement statute as a pretext for termination for cause by the individual defendants. On appeal, plaintiff contests only the latter ruling.

Defendants' action and their notice to plaintiff clearly and consistently asserted that plaintiff was being terminated for superannuation pursuant to R.C. 3307.37 and Board Policy 4119.3. We have already ruled that the board and its members had full authority to take that action, and that plaintiff was not deprived of any substantive or procedural rights by that action. Thus, the trial court properly granted defendants' motion for summary judgment since the issue of malice is not material to plaintiff's termination, even if she could prove the facts alleged in her complaint.

Plaintiff's second assignment of error is without merit.

## VII

Plaintiff's third assignment of error contends:

"The superannuation of plaintiff constituted an abuse of discretion and a denial of equal protection."

Plaintiff's appellate brief did not contain any argument on her equal protection claim. Errors not separately argued or supported by brief may be disregarded. App. R. 12(A), 16(A)(4); *Foster* v. *Cuyahoga Cty. Bd. of Elections* (Aug. 25, 1977), Cuyahoga App. No. 37140, unreported. Nevertheless, we will consider plaintiff's contention briefly.

Numerous federal cases have held that mandatory retirement provisions do not violate the Equal Protection Clause of the Fourteenth Amendment. See, *e.g.,* *Massachusetts Bd. of Retirement* v. *Murgia* (1976), 427 U.S. 307; *Vance* v. *Bradley* (1979), 440 U.S. 93; *Palmer* v. *Ticcoine* (C.A. 2, 1978), 576 F. 2d 459 (mandatory retirement of teachers at age seventy not violative of Equal Protection or Due Process Clauses). We conclude that mandatory retirement pursuant to R.C. 3307.37 and Board of Education Policy 4119.3 does not violate plaintiff's right to equal protection under the law.

Plaintiff also asserts that R.C. 3307.37 gives school boards discretion in superannuating teachers, and that a genuine issue of material fact remains whether defendant-school board abused this discretion by arbitrarily and capriciously terminating plaintiff. We disagree. The statute empowers local boards to superannuate professional per-

---

[4] R.C. 3319.16 provides in part:

"Before terminating any contract, the employing board shall furnish the teacher a written notice signed by its treasurer of its intention to consider the termination of his contract with full specification of the grounds for such consideration. The board shall not proceed with formal action to terminate the contract until after the tenth day after receipt of the notice by the teacher. Within ten days after receipt of the notice from the treasurer of the board, the teacher may file with the treasurer a written demand for a hearing before the board or before a referee, and the board shall set a time for the hearing which shall be within thirty days from the date of receipt of the written demand, and the treasurer shall give the teacher at least twenty days' notice in writing of the time and place of the hearing."

sonnel with continuing contracts. While it does not mandate superannuation at any age, it imposes no standards for selection of personnel who will be involuntarily retired at age seventy. Thus, the board is given unlimited statutory discretion in making that decision. Obviously, discrimination by some invidious classification (race, gender, etc.) would face real constitutional objection, but plaintiff makes no such claim here.

Further, the board's statutory discretion is greatly limited by the board's own established Policy No. 4119.3, which mandates retirement at age seventy, unless the board makes a special exception on the superintendent's recommendation. Thus, plaintiff could avoid the board's established policy for mandatory retirement only if she could show that her special circumstances would prevent any reasonable superintendent and any reasonable board member from denying her exceptional continuation after the mandatory retirement age. She makes no such claim, and the record denies that there could be any genuine issue about such a claim.

Plaintiff's third assignment of error is overruled, and the portions of the judgment from which she asserts her cross-appeal are affirmed. For the reasons discussed concerning defendants' assignments of error, the trial court's judgment for plaintiff is reversed, and final judgment is entered in favor of all defendants.

*Judgment accordingly.*

NAHRA and COOK, JJ., concur.

COOK, J., of the Eleventh Appellate District, sitting by assignment in the Eighth Appellate District.