[Cite as *State ex rel. Digiacinto v. Indus. Comm.*, 2018-Ohio-1999.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Paul A. Digiacinto, | : | |
| Relator, | : | |
| v. | : | No. 16AP-248 |
| Industrial Commission of Ohio and | : | (REGULAR CALENDAR) |
| Wheeling-Pittsburgh Steel Corp., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on May 22, 2018

**On brief:** *The Bainbridge Firm, LLC, Andrew J. Bainbridge, Christopher J. Yeager,* and *Carol L. Herdman,* for relator.

**On brief:** *Michael DeWine,* Attorney General, and *Eric J. Tarbox,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO MAGISTRATE'S DECISION

BRUNNER, J.

{¶ 1} Relator, Paul A. Digiacinto, filed this original action seeking a writ of mandamus that would order respondent, Industrial Commission of Ohio ("the commission"), to vacate its February 25, 2016 order that granted the December 15, 2015 motion of the administrator of the Ohio Bureau of Workers' Compensation ("the administrator" or "BWC") for the exercise of continuing jurisdiction over the November 30, 2015 order of its staff hearing officer ("SHO") that awarded permanent total disability ("PTD") compensation to relator, and to enter an order that denies the administrator's motion and reinstates the November 30, 2015 order of the SHO awarding PTD

compensation. At issue is whether the commission properly considered all relevant information in determining that Digiacinto was ineligible for PTD compensation because he had voluntarily abandoned the workforce.

{¶ 2} Digiacinto asserts that the commission abused its discretion in determining that he had voluntarily abandoned the workforce, rendering him ineligible to receive PTD compensation.

{¶ 3} We referred this matter to a magistrate of this Court pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law. The magistrate found Digiacinto failed to meet his burden proving that BWC had waived its legal right to assert the defense of voluntary abandonment of the workforce. The magistrate also found Digiacinto failed to meet his burden showing that his allowed condition "independently" caused his disability. (App'x at ¶ 83.) Based on these findings, the magistrate decided that this Court should deny Digiacinto's request for a writ of mandamus.

{¶ 4} Digiacinto timely filed his objections to the magistrate's decision. The record before us indicates that no memorandum contra the objections was filed.

{¶ 5} Having examined the magistrate's decision, conducted an independent review of the record pursuant to Civ.R. 53, and undertaken due consideration of the objections, we sustain Digiacinto's objections and remand this matter to the commission for action consistent with this decision.

## I.  FACTS AND PROCEDURAL BACKGROUND

{¶ 6} The magistrate's 15-page decision details Digiacinto's industrial injury claim history. No one disputes that on August 1, 2001, Digiacinto sustained an injury in the course of and arising out of his employment with respondent, Wheeling-Pittsburgh Steel Corporation, a self-insured employer. Digiacinto's claim was allowed initially for lumbar strain. Other conditions were allowed later, including disc herniation at L4-5 and L5-S1, lumbar radiculopathy, and right L3-4 disc herniation. Digiacinto was awarded temporary total disability ("TTD") compensation. That compensation was terminated in 2003 when Digiacinto had reached maximum medical improvement ("MMI") for the industrial injury.

{¶ 7} According to the record, Digiacinto filed for Social Security disability benefits on May 28, 2002 for the lumbar conditions allowed in his claim. A Social Security

Administration ("SSA") administrative law judge ("ALJ") heard Digiacinto's claim on August 22, 2003 and thereafter, on November 18, 2003, awarded him Social Security disability benefits. The ALJ's decision of the same date ("ALJ decision") contained these findings:

> After consideration of the entire record, the Administrative Law Judge makes the following findings:
>
> [One] The claimant has not engaged in any substantial gainful activity since the disability onset date.
>
> [Two] The claimant's impairments which are considered to be "severe" under the Social Security Act are as follows: lumbar disc herniations with foraminal stenosis and lumbar radiculopathy.
>
> [Three] The claimant's impairments do not, singly or in combination, meet or equal in severity the appropriate medical findings contained in 20 CFR Part 404, Appendix 1 to Subpart P (Listing of Impairments).
>
> [Four] The claimant's allegations are credible.
>
> [Five] The claimant has the residual functional capacity to do the following: He can perform the exertional demands of no more than sedentary work, or work which is generally performed while sitting and does not require lifting in excess of ten pounds.
>
> [Six] The claimant is unable to perform his past relevant work.
>
> [Seven] The claimant was 52 years old (closely approaching advanced age, 50 - 54) on the date his disability began. The claimant has a high school education.
>
> [Eight] The claimant has unskilled past relevant work.
>
> [Nine] Based upon the claimant's residual functional capacity, and vocational factors, there are no jobs existing in significant numbers which he can perform. This finding is based upon the following: medical - vocational rule 201.09.
>
> [Ten] The claimant met and meets the disability insured status requirements of the Social Security Act on the date disability began, and through December 31, 2006.

> [Eleven] <u>The claimant has been under a disability as defined by the Social Security Act and Regulations since December 6, 2001</u>.

(Emphasis sic.) (May 31, 2016 Stipulation of Evidence at 28.)

{¶ 8} Digiacinto applied for PTD compensation in 2006 and again in 2013. The commission denied both applications based on medical and vocational reports opining that Digiacinto was capable of performing sustained remunerative employment.

{¶ 9} In 2014, Digiacinto's claim was additionally allowed for psychological conditions, including "depressive disorder; generalized anxiety disorder; adjustment disorder with depressed mood." (July 5, 2016 Am. Stipulation of Evidence at 95.) Digiacinto was awarded TTD compensation beginning February 7, 2014 and ending November 24, 2015, when the allowed psychological conditions had reached MMI.

{¶ 10} On July 8, 2015, Digiacinto filed his third PTD application, this time supported with the report of psychologist Marian Chatterjee, Ph.D., who had examined him only for the allowed psychological conditions of the claim. In a five-page narrative report, Dr. Chatterjee opined that Digiacinto "is permanently and totally disabled" by the allowed psychological conditions. (May 31, 2016 Stipulation of Evidence at 56.) At the commission's request, Digiacinto then was examined by Nicholas Varrati, M.D., for only the allowed physical conditions of the claim. In his six-page narrative report, Dr. Varrati opined that Digiacinto "would be unable to sustain remunerative employment." *Id.* at 64. Additionally, Dr. Varrati indicated on a form captioned "Physical Strength Rating" that Digiacinto "is incapable of work." *Id.* at 65. BWC opposed Digiacinto's application, arguing that he had voluntarily abandoned the workforce.

{¶ 11} A commission SHO heard Digiacinto's application on November 30, 2015. At the hearing, Digiacinto submitted a copy of the ALJ's decision concluding that he is "entitled to a period of disability beginning December 6, 2001, and to disability insurance benefits under Sections 216(i) and 223, respectively, of the Social Security Act." *Id.* at 21.

{¶ 12} On December 2, 2015, the SHO mailed an order ("SHO's order") granting Digiacinto's 2015 application and awarding PTD compensation beginning September 9, 2015 based on the reports of Drs. Varrati and Chatterjee. The magistrate's decision sets forth the SHO's order, in which the SHO explained he was not finding that Digiacinto had voluntarily abandoned the workforce because the administrator had waived the defense of

voluntary abandonment. The SHO's order also contains consideration of the decision of the ALJ regarding Digiacinto's ability to work and whether he had voluntarily abandoned the workforce:

> However, even if the issue of voluntary abandonment of employment has not been waived, the Staff Hearing Officer finds that the Administrator has not demonstrated that the Injured Worker abandoned the entire workforce for reasons unrelated to this industrial injury. As indicated previously, the Injured Worker stated that he last worked in December, 2001 following the industrial injury in this claim. The Injured Worker filed for Social Security disability benefits on 05/28/2002 due to the lumbar conditions allowed in this claim and was awarded Social Security disability benefits following a hearing on 08/22/2003. Although the standard for awarding permanent total disability benefits in this claim and awarding Social Security disability benefits are different, the Staff Hearing Officer finds that the Injured Worker has demonstrated that his absence from the workforce was due to the allowed physical conditions in this claim and not due to a voluntary decision on his part to retire or otherwise not to work. Thus, his absence from the workforce cannot be considered a "retirement", nor can it be considered voluntary. This conclusion is reinforced by the numerous MEDCO-14 Physician's Reports of Work Ability and C-84 Request for Temporary Total Compensation reports on file from the Injured Worker's treating physicians for the allowed physical conditions and newly allowed psychological conditions that indicate that he was disabled from all employment due to these conditions. In this respect, the facts of this claim are not similar to those in State ex rel. Kelsey Hayes Co. v. Grashel, 138 Ohio St.3d 297, 2013-Ohio-4959 that describes the standard for a finding of voluntary abandonment of the workforce. Accordingly, the Staff Hearing Officer rejects the argument that the Injured Worker had voluntarily abandoned the entire workforce and is therefore precluded from receiving permanent total disability benefits.

(July 5, 2016 Am. Stipulation of Evidence at 95.)

{¶ 13} On December 15, 2015, BWC filed a request for reconsideration, which the commission approved on January 4, 2016. On February 25, 2016, the commission (with one member recusing) issued an order exercising continuing jurisdiction over the SHO's order, vacating the SHO's order, and determining that Digiacinto is ineligible for PTD compensation because he voluntarily abandoned the workforce. The commission's order,

pertinent parts of which are set forth in the magistrate's decision, states that it was a clear mistake of law for the SHO to find the administrator had waived the affirmative defense of voluntary abandonment of the workforce by not asserting it in prior proceedings before BWC and the commission.  The commission's order goes on to enumerate the evidence it considered when deciding that Digiacinto is ineligible for PTD application; absent from that enumeration is the 2003 decision of the ALJ finding Digiacinto was disabled as of December 2001.

{¶ 14}  Digiacinto commenced this action in mandamus on March 31, 2016, alleging the commission abused its discretion in determining that he had abandoned the workforce, rendering him ineligible to receive PTD compensation.

{¶ 15}  The magistrate's decision identifies two issues presented in this matter:

> (1) whether the finding in the SHO's order of November 30, 2015 that the administrator is barred from challenging eligibility for PTD compensation on grounds of workforce abandonment constitutes a clear mistake of law on which the commission can properly exercise its continuing jurisdiction, and (2) assuming the presence of a clear mistake of law on which the commission properly exercised its continuing jurisdiction, did the commission abuse its discretion by failing to find that the decision of the SSA administrative law judge excused relator from searching for work or pursuing vocational rehabilitation, thus preserving eligibility for PTD compensation?

(App'x at ¶ 63.) The magistrate reached the following conclusions of law:

> (1) the finding in the SHO's order of November 30, 2015 that the administrator is barred from challenging eligibility for PTD compensation is a clear mistake of law, and (2) the commission did not abuse its discretion by failing to find that the decision of the SSA administrative law judge excused relator from searching for work or pursuing vocational rehabilitation.

(App'x at ¶ 64.) The magistrate found that Digiacinto failed to meet his burden proving that BWC had waived its legal right to assert the defense of voluntary abandonment of the workforce.  The magistrate also found Digiacinto failed to meet his burden showing that his allowed condition "independently" caused his disability.  (App'x at ¶ 83.)  Based on these findings, the magistrate decided that this Court should deny Digiacinto's request for a writ of mandamus.

## II. OBJECTIONS TO MAGISTRATE'S DECISION

{¶ 16} Digiacinto presents two objections to the magistrate's decision:

I. The Magistrate erred in concluding that the industrial commission considered the decision of the Administrative Law Judge that found Relator to be incapable of work.

II. The Magistrate erred in finding that the ALJ's decision cannot be used to support a showing that Relator was incapable of returning to work and therefore did not abandon the work force.

## III. LAW AND DISCUSSION

### A. Standard of Review

{¶ 17} To be entitled to relief in mandamus, Digiacinto must establish that he has a clear legal right to relief, that the commission has a clear legal duty to provide such relief, and that he has no plain and adequate remedy in the ordinary course of law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983). To do this, Digiacinto must demonstrate that the commission abused its discretion and, "in this context, abuse of discretion has been repeatedly defined as a showing that the commission's decision was rendered without some evidence to support it." *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 20 (1987). To be successful in this mandamus action, Digiacinto must show that the commission's decision is not supported by some evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). Conversely, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion, and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Credibility and the weight to be given evidence are clearly within the discretion of the commission as the factfinder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

### B. First Objection

{¶ 18} The magistrate's decision identifies as one of two relevant inquiries before us "whether the commission abused its discretion by failing to find that the decision of the SSA administrative law judge excused [Digiacinto] from searching for work or pursuing vocational rehabilitation, thus preserving eligibility for PTD compensation." (App'x at ¶ 77.) The magistrate acknowledges that the commission's order "fails to even mention the decision of the administrative law judge," but determines that the failure to mention the

ALJ's decision "is not an abuse of discretion," given the rebuttable presumption that the commission considers "all the evidence before it."  (App'x at ¶ 78.)  *State ex rel. Lovell v. Indus. Comm.*, 74 Ohio St.3d 250, 252 (1996).  Instead, the magistrate concludes that "the presumption here is that the commission considered the decision of the administrative law judge but rejected it as being unpersuasive as to the issue before the commission."  (App'x at ¶ 80.)

{¶ 19}  Digiacinto argues that the magistrate erred in concluding that the commission had considered the ALJ's decision finding that Digiacinto was incapable of work.

{¶ 20}  Digiacinto cites to Ohio Adm.Code 4121-3-34(D)(1)(d), one of the guidelines that must be followed by the adjudicator in the sequential evaluation of applications for PTD compensation:

> If, after hearing, the adjudicator finds that the injured worker voluntarily removed himself or herself from the work force, the injured worker shall be found not to be permanently and totally disabled. If evidence of voluntary removal or retirement is brought into issue, the adjudicator shall consider evidence that is submitted of the injured worker's medical condition at or near the time of removal/retirement.

Digiacinto argues that this provision of the Ohio Administrative Code requires an adjudicator trying to determine an issue of voluntary abandonment to "consider evidence that is dispositive of the injured workers [sic] medical condition *at or near the time of removal* from the work force."  (Emphasis sic.) (Feb. 1, 2017 Objs. to Mag.'s Decision at 3.) He further argues that the commission's adjudication of whether Digiacinto abandoned the workforce should require examination of the ALJ's decision because that decision constitutes "evidence that is persuasive to a finding of total disability that is dated closest to the date of supposed abandonment." *Id.* at 4.  Digiacinto argues "that he did not abandon the workforce of his own volition and that only upon the finding of the Social Security Administration that he is 'unable to perform his past relevant work' did he come to the conclusion that future employment was not a possibility." *Id.*

{¶ 21}  Digiacinto relies on the holding of *State ex rel. Fultz v. Indus. Comm.,* 69 Ohio St.3d 327, 329 (1994), to address the rebuttable nature of the presumption that the commission considered "all the evidence." *Lovell.*  In *Fultz*, the commission order denying PTD benefits to the workers' compensation claimant listed the evidence it had considered.

Omitted from that list were reports relating to the claimant's vocational and physical attributes that were "key to the success or failure of claimant's application" for PTD benefits. *Fultz.* The Supreme Court of Ohio held that the commission "either inadvertently or intentionally ignored" highly pertinent evidence, an omission that resulted in the Court remanding the PTD consideration back to the commission. *Id.* Digiacinto submits that, in this matter, just as in *Fultz,* the presumption that all the evidence was considered "can be rebutted such that one can come to the conclusion that the [ALJ's] decision was 'either inadvertently or intentionally ignored.' " (Objs. to Mag.'s Decision at 5.)

{¶ 22} Digiacinto acknowledges in his objection that *Fultz* was subsequently held to apply only when a commission order lists the evidence considered. *State ex rel. Rothkegel v. Westlake*, 88 Ohio St.3d 409, 411 (2000). He maintains, however, that the commission's February 25, 2016 order "does in fact list the evidence considered and does in fact fail to include the ALJ's decision which is key to the success or failure of [Digiacinto's] application for PTD benefits." (Objs. to Mag.'s Decision at 6.) Digiacinto contends that the claim history portion of the commission's order "does not include information about the ALJ's decision that found [Digiacinto] was disabled and unfit for vocational rehabilitation and was unable to work as of December of 2001." *Id.* at 7. Digiacinto argues that *Fultz* requires the commission to consider the ALJ's decision, concluding that the magistrate's presumption that the commission considered, but was not persuaded by, the ALJ's decision "is not supported by the record." *Id.* at 8.

{¶ 23} We find Digiacinto's objection well-taken. Based on the evidence in the record, the ALJ's decision would seem to carry considerable weight in the commission's determination of Digiacinto's capability to work and, consequently, whether he left the workforce of his own volition. Under the facts presented, we find that the magistrate could not presume that the commission had considered "all the evidence" before it, specifically the ALJ's decision. *Lovell.* As a result, we disagree with the magistrate's conclusion that the commission's failure to mention the ALJ's decision in the February 25, 2016 order was not an abuse of discretion.

{¶ 24} We sustain Digiacinto's first objection to the magistrate's decision.

## C. Second Objection

{¶ 25} For his second objection, Digiacinto argues that the magistrate erred in finding the ALJ's decision cannot be used to support a showing that Digiacinto was

incapable of returning to work and, therefore, did not abandon the workforce of his own volition.

{¶ 26} Based on our review of the record, the magistrate's decision, and Digiacinto's objections, it appears that there is a misapprehension of why Digiacinto submitted the ALJ's decision. The magistrate concludes that the ALJ's decision cannot be relied on because the medical impairments underlying the ALJ's decision include a non-allowed condition, foraminal stenosis. Relying on *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452 (1993), the magistrate concludes that non-allowed medical conditions cannot be used to advance or defeat a request for PTD compensation, although the mere presence of non-allowed conditions does not automatically bar PTD compensation. The magistrate stated:

> The claimant must meet his or her burden of showing that an allowed condition "independently" caused the disability. *State ex rel. Bradley v. Indus. Comm.*, 77 Ohio St.3d 239, 242 (1997). The allowed condition cannot combine with a non-allowed condition to produce compensation. *Id.*
>
> Here, relator cannot use a non-allowed condition, i.e., foraminal stenosis, to show that he was excused from searching for work or pursuing vocational rehabilitation. While the commission was silent on this point in its February 25, 2016 order, it is clear nevertheless that the decision of the administrative law judge cannot be used to advance or defeat relator's third PTD application.

(App'x at ¶ 83-84.)

{¶ 27} Digiacinto argues that the magistrate's analysis is flawed because the ALJ's decision was submitted "merely to show that Digiacinto did not abandon the workforce," not to support his application for PTD compensation:

> [Digiacinto] was told by the ALJ that he could not work, he did not make that decision on his own. Therefore, even though the ALJ's decision does consider non-allowed conditions[,] the ALJ's decision is not provided to advance the claim that [Digiacinto] was permanently and totally disabled but rather to show that [Digiacinto] did not intentionally, or on his own volition, abandon the work force.

(Objs. to Mag.'s Decision at 9-10.)

{¶ 28} Digiacinto argues there is enough medical evidence in his claim file to support a finding that he is permanently and totally disabled based solely on the allowed conditions

of his claim and because of it he has sustained his burden of showing that an allowed condition "independently" caused his disability. (App'x at ¶ 83.) Digiacinto argues that the magistrate erred in upholding the commission's apparent failure to consider the ALJ's decision based on the magistrate's belief that the ALJ decision was intended to support Digiacinto's request for PTD compensation, when in fact the decision was not provided for that purpose.

{¶ 29} We agree with Digiacinto and also sustain his second objection to the magistrate's decision.

## IV.  CONCLUSION

{¶ 30} Having reviewed the magistrate's decision, having made an independent review of the record, and having given due consideration of Digiacinto's objections, we find the magistrate has properly stated many of the pertinent facts, except as to the purpose for which Digiacinto submitted the ALJ's report.  We adopt those facts with which we agree and make the additional findings of fact based on the record and the unopposed objections of Digiacinto.

{¶ 31}  We disagree with the magistrate's conclusions of law and do not adopt them. Accordingly, we sustain both of Digiacinto's objections to the magistrate's decision.  We hereby issue a limited writ of mandamus, ordering the commission to vacate its decision of February 25, 2016 that vacated the SHO's order of November 30, 2015 (mailed December 2, 2015) by which it determined that Digiacinto was ineligible for PTD compensation for voluntary abandonment of the workforce.  The commission is hereby ordered to conduct a new hearing in a manner consistent with our conclusions of law as expressed in this decision and thereafter enter a new order that adjudicates Digiacinto's PTD application having corrected the deficiencies we have noted with its November 30, 2015 decision.

*Objections sustained;*
*writ of mandamus granted.*

KLATT and DORRIAN, JJ., concur.

_____

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio ex rel. Paul A. Digiacinto,          :

            Relator,                               :

v.                                                 :            No. 16AP-248

Industrial Commission of Ohio                      :            (REGULAR CALENDAR)
and
Wheeling-Pittsburgh Steel Corp.,                   :

            Respondents.                           :

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on January 19, 2017

---

*The Bainbridge Firm, LLC, Andrew J. Bainbridge, Christopher J. Yeager,* and *Carol L. Herdman,* for relator.

*Michael DeWine,* Attorney General, and *Eric J. Tarbox,* for respondent Industrial Commission of Ohio.

---

IN MANDAMUS

{¶ 32} In this original action, relator, Paul A. Digiacinto, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its February 25, 2016 order that grants the December 15, 2015 motion of the administrator of the Ohio Bureau of Workers' Compensation ("administrator" or "bureau") for the exercise of continuing jurisdiction over the November 30, 2015 order of its staff hearing officer ("SHO") that awarded permanent total disability ("PTD") compensation to relator, and to enter an order that denies the administrator's motion and reinstates the November 30, 2015 order of the SHO awarding PTD compensation.

Findings of Fact:

{¶ 33} 1. On August 1, 2001, relator injured his lower back while employed with respondent, Wheeling-Pittsburgh Steel Corporation. The injury occurred when relator was operating a forklift and hit a pothole.

{¶ 34} 2. The industrial claim (No. 01-838445) was initially allowed for "lumbar strain."

{¶ 35} 3. Following an August 27, 2002 hearing before an SHO, the SHO issued an order additionally allowing the claim for "disc herniation at L4-5 and L5-S1." Based on a July 22, 2002 C-84 report from attending physician John J. Moossy, M.D., the SHO awarded temporary total disability ("TTD") compensation from May 21 through August 27, 2002 and to continue based on medical proof.

{¶ 36} 4. On May 20, 2003, the self-insured employer moved to terminate TTD compensation on grounds that the allowed conditions in the claim had reached maximum medical improvement ("MMI").

{¶ 37} 5. Following a June 30, 2003 hearing, a district hearing officer ("DHO") issued an order terminating TTD compensation effective the hearing date on grounds that the industrial injury had reached MMI.

{¶ 38} 6. Relator administratively appealed the DHO's order of June 30, 2003.

{¶ 39} 7. Following an August 6, 2003 hearing, an SHO issued an order affirming the DHO's order of June 30, 2003.

{¶ 40} 8. On June 5, 2006, relator filed the first of three applications for PTD compensation.

{¶ 41} 9. Following a January 2, 2007 hearing, an SHO issued an order denying the PTD application. (The SHO's order indicates that the industrial claim had been additionally allowed for "lumbar radiculopathy; right L3-4 disc herniation.")

{¶ 42} 10. In the January 2, 2007 order, the SHO relied on a report from Dr. Sushil Sethi who opined that relator is capable of medium level work. Based on Dr. Sethi's report and two vocational reports, the SHO concluded that relator is able to return to his former job as a "tractor operator at a steel mill." The SHO also found that relator had "last worked on 12/06/2001, at which time he was 52 years old."

{¶ 43} Alternatively, the SHO's order of January 2, 2007 explains that relator can be re-employed at jobs other than his former position of employment.

{¶ 44} 11. On September 16, 2013, relator filed his second application for PTD compensation.

{¶ 45} 12. Following a January 7, 2014 hearing, an SHO issued an order denying the PTD application.

{¶ 46} 13. In his January 7, 2014 order, the SHO relied on a report from John L. Dunne, D.O., who opined that relator is currently functioning at the sedentary work level. The SHO also considered the non-medical factors. The SHO concluded that relator is capable of performing sustained remunerative employment.

{¶ 47} 14. Thereafter, the industrial claim was additionally allowed for various psychological conditions. That is, the claim was additionally allowed for "depressive disorder; generalized anxiety disorder; dysthymic disorder; adjustment disorder with depressed mood."

{¶ 48} 15. On October 20, 2014, the bureau mailed an order awarding TTD compensation beginning February 7, 2014 presumably based on a Medco-14 completed by treating psychologist Lee E. Roach, Ph.D.

{¶ 49} 16. On July 29, 2015, an SHO extended TTD compensation to June 5, 2015 and to continue on submission of medical proof.

{¶ 50} 17. On October 27, 2015, the bureau moved for termination of TTD compensation based on a report from psychologist Anthony DeRosa, Ph.D.

{¶ 51} 18. Following a November 24, 2015 hearing, a DHO issued an order terminating TTD compensation effective the hearing date based on the opinion of Dr. DeRosa that the allowed psychological conditions had reached MMI. Apparently, the DHO's order was not administratively appealed.

{¶ 52} 19. Earlier, on June 5, 2015, relator was examined at his own request by psychologist Marian Chatterjee, Ph.D. Dr. Chatterjee examined only for the allowed psychological conditions of the claim. In a five-page narrative report, Dr. Chatterjee opined that relator "is permanently and totally disabled" by the allowed psychological conditions.

{¶ 53} 20. On July 8, 2015, relator filed his third PTD application. In support, relator submitted the report of Dr. Chatterjee.

{¶ 54} 21. On August 27, 2015, at the commission's request, relator was examined by Nicholas Varrati, M.D. Dr. Varrati examined only for the allowed physical conditions of the claim. In his six-page narrative report, Dr. Varrati opined that relator "would be unable to sustain remunerative employment."

{¶ 55} 22. On a form captioned "Physical Strength Rating," dated September 9, 2015, Dr. Varrati indicated by his mark "[t]his Injured Worker is incapable of work."

{¶ 56} 23. Following a November 30, 2015 hearing, an SHO mailed an order on December 2, 2015 granting relator's third application and awarding PTD compensation beginning September 9, 2015 based on the report of Dr. Varrati and the report of Dr. Chatterjee. In his order, the SHO initially explained why he was not finding that relator had voluntarily abandoned the workforce. He then explained the PTD award. The SHO's order of November 30, 2015 states:

> The Administrator's representative raised the issue of voluntary abandonment of employment, alleging that the Injured Worker had voluntarily abandoned the entire workforce for reasons unrelated to this claim as he last worked in December, 2001 according to his IC-2 application and there is no evidence on file that the Injured Worker sought work thereafter or participated in vocational rehabilitation.
>
> However, the Administrator has had multiple opportunities to raise this issue previously, including a hearing on 01/07/2014 where permanent total disability was denied for medical reasons. In addition, when the Injured Worker requested temporary total disability for newly allowed psychological conditions in 2014, the Administrator issued an order on 10/20/2014 that granted temporary total compensation and did not raise the issue of voluntary retirement. Hearings were also held before the Industrial Commission on 06/16/2015 and 07/29/2015 regarding temporary total disability and again the issue of voluntary retirement was apparently not raised by the Administrator. In light of the Administrator's failure to raise this issue despite multiple opportunities to do so previously, the Staff Hearing Officer finds that the Administrator has waived this issue.
>
> However, even if the issue of voluntary abandonment of employment has not been waived, the Staff Hearing Officer finds that the Administrator has not demonstrated that the Injured Worker abandoned the entire workforce for reasons unrelated to this industrial injury. As indicated previously, the

Injured Worker stated that he last worked in December, 2001 following the industrial injury in this claim. The Injured Worker filed for Social Security disability benefits on 05/28/2002 due to the lumbar conditions allowed in this claim and was awarded Social Security disability benefits following a hearing on 08/22/2003. Although the standard for awarding permanent total disability benefits in this claim and awarding Social Security disability benefits are different, the Staff Hearing Officer finds that the Injured Worker has demonstrated that his absence from the workforce was due to the allowed physical conditions in this claim and not due to a voluntary decision on his part to retire or otherwise not to work. Thus, his absence from the workforce cannot be considered a "retirement", nor can it be considered voluntary. This conclusion is reinforced by the numerous MEDCO-14 Physician's Reports of Work Ability and C-84 Request for Temporary Total Compensation reports on file from the Injured Worker's treating physicians for the allowed physical conditions and newly allowed psychological conditions that indicate that he was disabled from all employment due to these conditions. In this respect, the facts of this claim are not similar to those in State ex rel. Kelsey Hayes Co. v. Grashel, 138 Ohio St.3d 297, 2013-Ohio-4959 that describes the standard for a finding of voluntary abandonment of the workforce. Accordingly, the Staff Hearing Officer rejects the argument that the Injured Worker had voluntarily abandoned the entire workforce and is therefore precluded from receiving permanent total disability benefits.

After full consideration of the issue it is the order of the Staff Hearing Officer that the Injured Worker's IC-2 Application for Permanent Total Disability Compensation is granted. Permanent total disability compensation is awarded from 09/09/2015 (less any compensation that previously may have been awarded over the same period), and to continue without suspension unless future facts or circumstances should warrant the stopping of the award. Such payments are to be made in accordance with R.C. 4123.58(A).

Permanent and total disability compensation is awarded from 09/09/2015 for the reason that this is the date of the report of Nicholas Varrati, M.D., upon which the Staff Hearing Officer relies.

* * *

> Based upon the reports of Nicholas Varrati, M.D., and Marian Chatterjee, Ph.D., it is found that the Injured Worker is unable to perform any sustained remunerative employment solely as a result of the medical impairment caused by the allowed conditions. Therefore, pursuant to State ex rel. Speelman v. Indus. Comm. (1992), 73 Ohio App.3d 757, it is not necessary to discuss or analyze the Injured Worker's non-medical disability factors.
>
> Nicholas Varrati, M.D., examined the Injured Worker on 08/27/2015 on behalf of the Industrial Commission regarding the allowed physical conditions in this claim. Dr. Varrati found that the Injured Worker demonstrated tenderness to palpation over the L3-S1 areas of the lumber spine, had decreased sensation over the lower left leg, had significantly decreased range of motion of the lumbar spine, and demonstrated positive bilateral straight leg raising tests. He found that the allowed physical conditions have reached maximum medical improvement and opined an 18% whole person impairment due to this conditions [sic]. Dr. Varrati concluded that the Injured Worker is incapable of work due to the allowed physical conditions in this claim.
>
> Marian Chatterjee, Ph.D., issued a report dated 06/05/2015 that evaluated the Injured Worker's allowed psychological conditions. Dr. Chatterjee found a 31% whole person impairment due to the allowed psychological conditions. Dr. Chatterjee found a mild, Class II impairment of activities of daily living, but moderate, Class III impairments of social functioning and concentration, persistence and pace, along with a moderate to marked, Class III to IV impairment of adaptation to stressful circumstances. Dr. Chatterjee concluded that the allowed psychological conditions render the Injured Worker permanently and totally disabled.
>
> The Staff Hearing Officer finds the opinions of Dr. Varrati and Dr. Chatterjee persuasive.

{¶ 57} 24. At the November 30, 2015 hearing, relator submitted a copy of a decision of an administrative law judge of the Social Security Administration ("SSA") that determined that relator is "entitled to a period of disability beginning December 6, 2001, and to disability insurance benefits under Sections 216(i) and 223, respectively, of the Social Security Act."

{¶ 58} Dated November 18, 2003, the decision of the administrative law judge presents the following findings:

> After consideration of the entire record, the Administrative Law Judge makes the following findings:
>
> [One] The claimant has not engaged in any substantial gainful activity since the disability onset date.
>
> [Two] The claimant's impairments which are considered to be "severe" under the Social Security Act are as follows: lumbar disc herniations with foraminal stenosis and lumbar radiculopathy.
>
> [Three] The claimant's impairments do not, singly or in combination, meet or equal in severity the appropriate medical findings contained in 20 CFR Part 404, Appendix 1 to Subpart P (Listing of Impairments).
>
> [Four] The claimant's allegations are credible.
>
> [Five] The claimant has the residual functional capacity to do the following: He can perform the exertional demands of no more than sedentary work, or work which is generally performed while sitting and does not require lifting in excess of ten pounds.
>
> [Six] The claimant is unable to perform his past relevant work.
>
> [Seven] The claimant was 52 years old (closely approaching advanced age, 50 - 54) on the date his disability began. The claimant has a high school education.
>
> [Eight] The claimant has unskilled past relevant work.
>
> [Nine] Based upon the claimant's residual functional capacity, and vocational factors, there are no jobs existing in significant numbers which he can perform. This finding is based upon the following: medical - vocational rule 201.09.
>
> [Ten] The claimant met and meets the disability insured status requirements of the Social Security Act on the date disability began, and through December 31, 2006.
>
> [Eleven] The claimant has been under a disability as defined by the Social Security Act and Regulations since December 6, 2001.

(Emphasis sic.)

{¶ 59} 25. On December 15, 2015, the administrator moved for the commission's exercise of continuing jurisdiction over the SHO's order of November 30, 2015.

{¶ 60} 26. On January 9, 2016, with one member in recusal, the commission mailed an interlocutory order, stating:

> It is the finding of the Industrial Commission the Administrator has presented evidence of sufficient probative value to warrant adjudication of the Request for Reconsideration regarding the alleged presence of a clear mistake of fact in the order from which reconsideration is sought and a clear mistake of law of such character that remedial action would clearly follow.
>
> Specifically, it is alleged the Staff Hearing Officer mistakenly determined the Administrator waived the issue of voluntary abandonment and mistakenly concluded the Injured Worker had not voluntarily abandoned the workforce.
>
> Based on those findings, the Industrial Commission directs the Administrator's Request for Reconsideration, filed 12/15/2015, be set for hearing to determine whether the alleged mistakes of fact and law as noted herein are sufficient for the Industrial Commission to invoke its continuing jurisdiction.
>
> In the interest of administrative economy and for the convenience of the parties, after the hearing on the question of continuing jurisdiction, the Industrial Commission will take the matter under advisement and proceed to hear the merits of the underlying issue(s). The Industrial Commission will thereafter issue an order on the matter of continuing jurisdiction under R.C. 4123.52. If authority to invoke continuing jurisdiction is found, the Industrial Commission will address the merits of the underlying issue(s).

{¶ 61} 27. Following a February 25, 2016 hearing, the commission (with one member in recusal) issued an order exercising continuing jurisdiction over the SHO's order of November 30, 2015. The commission's February 25, 2016 order vacates the SHO's order of November 30, 2015 (mailed December 2, 2015) and determines that relator is ineligible

for PTD compensation because he voluntarily abandoned the workforce. The commission's February 25, 2016 order explains:

> [I]t is the finding of the Industrial Commission the Administrator has met the burden of proving the Staff Hearing Officer order, issued 12/02/2015, contains a clear mistake of law of such character remedial action would clearly follow. Specifically, the Staff Hearing Officer erred in finding the Administrator waived the affirmative defense of voluntary abandonment by not asserting it in prior proceedings before the Bureau of Workers' Compensation and the Commission. Therefore, the Commission exercises continuing jurisdiction pursuant to R.C. 4123.52 * * *.
>
> * * *
>
> It is the decision of the Commission to deny the Injured Worker's IC-2 Application for Compensation for Permanent Total Disability, filed 07/08/2015.
>
> Historically, two prior IC-2 Applications have been adjudicated by the Commission's Staff Hearing Officers. The first, filed 06/05/2006, was denied by the Staff Hearing Officer order, issued 01/13/2007. In denying the Application, the Staff Hearing Officer found the Injured Worker remained capable of medium-duty work, including his former position of employment. The Staff Hearing Officer noted although the Injured Worker was within the normal age guidelines for vocational rehabilitation when he last worked at age 52, no vocational rehabilitation had been attempted based upon the Injured Worker's testimony. The second Application, filed 09/16/2013, was denied by Staff Hearing Officer order, issued 01/11/2014. The Staff Hearing Officer found the Injured Worker vocationally capable of sedentary work.
>
> Thereafter, the claim was additionally allowed to include several psychological conditions. Previously temporary total disability compensation, based upon the physical conditions then allowed, had last been paid through 06/30/2003, and terminated based upon a finding of maximum medical improvement. The order of the Administrator, issued 10/20/2014, reinstated temporary total disability compensation effective 02/07/2014, based upon the psychological conditions, and payment continued through 08/07/2014. Temporary total disability compensation from 08/08/2014 forward, also based upon the psychological conditions, was awarded by the order of the Staff Hearing

Officer, issued 07/31/2015. By order of the District Hearing Officer, issued 11/27/2015, the psychological conditions were found to have reached maximum medical improvement, and payment of temporary total disability compensation was terminated effective 11/24/2015. In a report dated 09/09/2015, from an examination on 08/27/2015, Nicholas Varrati, M.D., a specialist examining the Injured Worker on the Commission's behalf regarding the allowed physical conditions and the permanent total impairment issue, opined the impairment arising from the allowed physical conditions permanently rendered the Injured Worker incapable of any work activity.

The Commission finds the Injured Worker is ineligible for compensation for permanent total disability because he voluntarily removed himself from the workforce. State ex rel. Kelsey Hayes Co. v. Grashel, 138 Ohio St.3d 297, 2013-Ohio-4959, 6 N.E.3d 1128. The Commission finds the respective orders of the Staff Hearing Officers, issued 01/13/2007 and 01/11/2014, found the Injured Worker capable of medium-duty work, including his former position of employment, and sedentary work. Notwithstanding those determinations of his residual functional capacities, the Commission finds the Injured Worker made no attempt to reenter the work force, either by seeking work within his skill set or by pursuing vocational rehabilitation and retraining between 06/30/2003 and 02/07/2014, the dates temporary total disability compensation was terminated and reinstated. Although temporary total disability was reinstated effective 02/07/2014, and Dr. Varrati has recently opined the allowed physical conditions now render the Injured Worker incapable of any work activity, the Commission finds the Injured Worker abandoned the work force prior to those determinations. Therefore, the Commission finds the Injured Worker is precluded from eligibility for permanent total disability compensation. State ex rel. Baker Material Handling Corp. v. Indus. Comm., 69 Ohio St.3d 202, 631 N.E.2d 138 (1994), paragraph two of the syllabus.

{¶ 62} 28. On March 31, 2016, relator, Paul A. Digiacinto, filed this mandamus action.

Conclusions of Law:

{¶ 63} Two issues are presented: (1) whether the finding in the SHO's order of November 30, 2015 that the administrator is barred from challenging eligibility for PTD

compensation on grounds of workforce abandonment constitutes a clear mistake of law on which the commission can properly exercise its continuing jurisdiction, and (2) assuming the presence of a clear mistake of law on which the commission properly exercised its continuing jurisdiction, did the commission abuse its discretion by failing to find that the decision of the SSA administrative law judge excused relator from searching for work or pursuing vocational rehabilitation, thus preserving eligibility for PTD compensation?

{¶ 64} The magistrate finds: (1) the finding in the SHO's order of November 30, 2015 that the administrator is barred from challenging eligibility for PTD compensation is a clear mistake of law, and (2) the commission did not abuse its discretion by failing to find that the decision of the SSA administrative law judge excused relator from searching for work or pursuing vocational rehabilitation.

### First Issue

{¶ 65} Workforce abandonment can bar a request for TTD compensation. *State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245. It can also bar a request for PTD compensation. *State ex rel. Black v. Indus. Comm.,* 137 Ohio St.3d 75, 2013-Ohio-4550.

{¶ 66} According to the SHO's order of November 30 2015, the administrator had multiple opportunities to raise the issue of workforce abandonment prior to relator's third application for PTD compensation filed July 8, 2015.

{¶ 67} As further pointed out by the SHO's order of November 30, 2015, at the January 7, 2014 hearing on relator's second application for PTD compensation, the defense of voluntary workforce abandonment was not raised. That is, in the SHO's order of January 7, 2014 adjudicating relator's second PTD application, there is no indication that the administrator raised the issue of workforce abandonment.

{¶ 68} As further pointed out by the SHO's order of November 30, 2015, on October 20, 2014, the bureau mailed an order awarding TTD compensation beginning February 7, 2014 based on a report from psychologist Lee E. Roach, Ph.D. Obviously, the administrator did not raise the issue of workforce abandonment when the October 20, 2014 award of TTD compensation issued.

{¶ 69} As further pointed out by the SHO's order of November 30, 2015, following a July 29, 2015 hearing, another SHO extended TTD compensation to June 5, 2015 and to

continue on submission of medical proof. There is no indication in the SHO's order of July 29, 2015 that the administrator raised the issue of workforce abandonment.

{¶ 70} Based on the failure of the administrator to raise the issue of workforce abandonment prior to the adjudication of the third PTD application with respect to the several instances discussed above, the SHO's order of November 30, 2015 concludes that the administrator waived the issue and was therefore precluded from raising the defense to relator's third PTD application.

{¶ 71} As earlier noted, the commission's order of February 25, 2016 determined that the conclusion in the SHO's order of November 30, 2015 that the administrator had waived the issue is a clear mistake of law.

{¶ 72} Here, without citation to authority, relator asserts that the SHO's order of November 30, 2015 does not contain a clear mistake of law and that the SHO's order of November 30, 2015 is correct in determining that the administrator waived the defense of voluntary workforce abandonment prior to the filing and adjudication of the third PTD application.

{¶ 73} "Waiver is the voluntary surrender or relinquishment of a known legal right by agreement, or a failure to act upon a right plainly indicating an intention not to claim such right." *Meyer v. Chagrin Falls Exempted Village School Dist. Bd. of Edn.,* 9 Ohio App.3d 320, 324 (8th Dist.1983). "[T]he party asserting the defense of waiver bears the burden to prove it by a preponderance of the evidence, by showing 'a clear, unequivocal, decisive act of the party against whom the waiver is asserted, showing such a purpose or acts amounting to an estoppel on his part.' " *Fultz & Thatcher v. Burrows Group Corp.,* 12th Dist. No. CA2005-11-126, 2006-Ohio-7041, ¶ 42, quoting *White Co. v. Canton Transp. Co.,* 131 Ohio St. 190 (1936), paragraph four of the syllabus.

{¶ 74} It is clear that relator failed to meet his burden of proving that the administrator waived his legal right to assert the defense of voluntary workforce abandonment.

{¶ 75} Continuing jurisdiction is not unlimited. Its prerequisites are (1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, and (5) error by inferior tribunal. *State ex rel. Royal v. Indus. Comm.,* 95 Ohio St.3d 97, 99 (2002).

{¶ 76} Based on the above analysis, the magistrate concludes that the commission properly determined that the SHO's order of November 30, 2015 contained a clear mistake of law in finding that the administrator had waived his legal right to assert the defense of workforce abandonment to relator's third application for PTD compensation.

## Second Issue

{¶ 77} The second issue is whether the commission abused its discretion by failing to find that the decision of the SSA administrative law judge excused relator from searching for work or pursuing vocational rehabilitation, thus preserving eligibility for PTD compensation.

{¶ 78} To begin, it can be observed that the commission's order of February 25, 2016 fails to even mention the decision of the administrative law judge. Clearly, the failure to mention the decision of the administrative law judge is not an abuse of discretion.

{¶ 79} In *State ex rel. Lovell v. Indus. Comm.*, 74 Ohio St.3d 250, 252 (1996), the Supreme Court of Ohio succinctly summarized law applicable here:

> *State ex rel. Mitchell v. Robbins & Myers, Inc.* (1983), 6 Ohio St.3d 481, 6 Ohio B. Rep. 531, 453 N.E.2d 721, directed the commission to cite in its orders the evidence on which it relied to reach its decision. Reiterating the concept of reliance, *State ex rel. DeMint v. Indus. Comm.* (1990), 49 Ohio St.3d 19, 20, 550 N.E.2d 174, 176, held:
>
> "*Mitchell* mandates citation of only that evidence relied on. It does not require enumeration of all evidence considered." (Emphasis original.)
>
> Therefore, because the commission does not have to list the evidence considered, the presumption of regularity that attaches to commission proceedings (*State ex rel. Brady v. Indus. Comm.* [1990], 28 Ohio St.3d 241, 28 Ohio B. Rep. 322, 503 N.E.2d 173) gives rise to a second presumption--that the commission indeed considered all the evidence before it. That presumption, however, is not irrebuttable as *Fultz* demonstrates.

*Lovell* at 252.

{¶ 80} Thus, the presumption here is that the commission considered the decision of the administrative law judge but rejected it as being unpersuasive as to the issue before the commission.

{¶ 81} Again, relator submitted the decision of the administrative law judge at the November 30, 2015 hearing on the PTD application in order to show that he should be excused from searching for work or pursuing vocational rehabilitation, thus preserving eligibility for PTD compensation. As the commission points out in this action, reliance on the decision of the administrative law judge would have been problematic for the commission because the medical impairments underlying the decision include a non-allowed condition. That is, the SSA decision is premised on "lumbar disc herniations with foraminal stenosis and lumbar radiculopathy." The industrial claim is not allowed for foraminal stenosis.

{¶ 82} Non-allowed medical conditions cannot be used to advance or defeat a request for PTD compensation. *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452, 454 (1993). However, the mere presence of non-allowed conditions does not automatically bar PTD compensation. *Id.*

{¶ 83} The claimant must meet his or her burden of showing that an allowed condition "independently" caused the disability. *State ex rel. Bradley v. Indus. Comm.*, 77 Ohio St.3d 239, 242 (1997). The allowed condition cannot combine with a non-allowed condition to produce compensation. *Id.*

{¶ 84} Here, relator cannot use a non-allowed condition, i.e., foraminal stenosis, to show that he was excused from searching for work or pursuing vocational rehabilitation. While the commission was silent on this point in its February 25, 2016 order, it is clear nevertheless that the decision of the administrative law judge cannot be used to advance or defeat relator's third PTD application.

{¶ 85} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

### NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a

finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii),
unless the party timely and specifically objects to that factual
finding or legal conclusion as required by Civ.R. 53(D)(3)(b).